UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RAINER F. HUCK; and JOHN ANDERSON, <br><br>        Plaintiffs, <br><br> v. <br><br> BUREAU OF LAND MANAGEMENT; and U.S. DEPARTMENT OF THE INTERIOR , <br><br>        Defendants. | **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (DOC. NO. 3) AND DISMISS ACTION WITH PREJUDICE** <br><br> Case No. 2:25-cv-00194 <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Daphne A. Oberg |

Rainer F. Huck and John Anderson, proceeding without an attorney, filed this action against the Bureau of Land Management and the United States Department of the Interior, challenging Congress's designation of certain public lands managed by BLM as wilderness areas, and associated restrictions on motor vehicles in those areas.[1] Mr. Huck and Mr. Anderson claim prohibiting vehicles in wilderness areas violates their constitutional rights and exceeds BLM's statutory authority.  BLM and DOI have filed a motion to dismiss.[2]  Because Mr. Huck and Mr. Anderson fail to state any plausible claim for relief, and this is their fourth lawsuit asserting the same or similar claims, the

---

[1] (*See* Compl., Doc. No. 1.)

[2] (Def.'s Mot. to Dismiss (Mot.), Doc. No. 3.)

undersigned[3] recommends the district judge grant the motion to dismiss and dismiss this case with prejudice.

## BACKGROUND

Mr. Huck and Mr. Anderson are off-road enthusiasts who were 78 and 87 years old, respectively, when they filed the complaint.[4]  Both have physical disabilities preventing them from accessing wilderness lands without the assistance of motorized vehicles.[5]  In 2019, Congress designated certain public lands in Utah as wilderness areas under the John D. Dingell Jr. Conservation, Management, and Recreation Act (Dingell Act).[6]  Federal law prohibits the use of motor vehicles in designated wilderness areas and delegates authority for management of these areas to BLM.[7]  As a result, Mr. Huck and Mr. Anderson assert they are now excluded from the public lands they used recreationally for decades.[8]  Mr. Huck and Mr. Anderson claim these wilderness designations and associated motor vehicle restrictions violate the First Amendment's

---

[3] This case is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  (*See* Doc. No. 9.)

[4] (Compl. ¶¶ 16, 18, Doc. No. 1.)

[5] (*Id.*)

[6] Pub. L. No. 116-9, 113 Stat. 580 (2019).

[7] *See* 16 U.S.C. § 1133(c) ("[E]xcept as necessary to meet minimum requirements for the administration of the area for the purpose of this Act . . . , there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, no landing of aircraft, no other form of mechanical transport, and no structure or installation within any such area."); 43 U.S.C. §§ 1731(b), 1732(a) (delegating authority regarding the management of designated wilderness areas to BLM).

[8] (Compl. ¶¶ 16–18, Doc. No. 1.)

Establishment Clause and infringe their Fifth Amendment rights to due process and equal protection.[9]  They also contend BLM exceeded its statutory authority in imposing vehicle restrictions.[10]

<u>Prior Cases: Huck I and Huck II</u>

Mr. Huck and Mr. Anderson have filed three prior lawsuits challenging wilderness designations and vehicle restrictions.  First, in 2019, Mr. Huck and Mr. Anderson filed suit against BLM and others, alleging wilderness designations were "contrary to existing law and deprive[d] Plaintiffs and other aged, handicapped or disabled people access to public lands."[11]  They claimed the motor vehicle restrictions in wilderness areas violated the First Amendment's Establishment Clause, infringed their Fifth Amendment due process and equal protection rights, and were unlawful under the Administrative Procedure Act.[12]  The court dismissed the case for lack of standing, finding Mr. Huck and Mr. Anderson failed to demonstrate an injury-in-fact where they did not allege concrete plans to visit the areas at issue.[13]

Mr. Huck and Mr. Anderson filed their second suit in 2021, asserting many of the same claims but adding new allegations regarding their plans to visit the wilderness

---

[9] (*Id*. at 18–23.)

[10] (*See id*. at 23–28.)

[11] (Compl. 2, Doc. No. 1 in *Huck v. BLM*, No. 2:19-cv-00536 (D. Utah July 29, 2019).)

[12] (*Id.* at 15–20.)

[13] *Huck v. BLM*, No. 2:19-cv-00536, 2020 U.S. Dist. LEXIS 61179, at *5–6 (D. Utah Apr. 6, 2020) (unpublished) (*Huck I*).

areas and claiming fear of prosecution.[14]  The court again dismissed their claims, this time based on lack of redressability.[15]  The court focused on Mr. Huck and Mr. Anderson's assertion that motor vehicle restrictions violated valid rights-of-way first granted under an 1866 statute known as "R.S. 2477" and later preserved by the Federal Land Policy Management Act of 1976,[16] and their request for an injunction reopening those historical roadways.[17]  The court determined this remedy was exclusively available under the Quiet Title Act,[18] but noted Mr. Huck and Mr. Anderson did not bring a Quiet Title Act claim (nor did they assert title in any of the roads, as required for standing under that statute).[19]  Accordingly, the court concluded Mr. Huck and Mr. Anderson's constitutional claims seeking this same remedy were not redressable.[20]

---

[14] (Compl. 8–9, 22–28, Doc. No. 1 in *Huck v. United States*, No. 2:21-cv-00011 (D. Utah Jan. 7, 2021).)

[15] *See Huck v. United States*, No. 2:21-cv-00011, 2022 U.S. Dist. LEXIS 131117, at *10–12 (D. Utah July 22, 2022) (unpublished) (*Huck II*).  This final order in the second case addressed Mr. Huck and Mr. Anderson's constitutional claims.  Earlier in that case, the court dismissed their other claims concerning "BLM's regulatory obligations" because "Plaintiffs lacked standing, their claims were not ripe for review, and the United States had not waived its sovereign immunity."  *Id.* at *2 (summarizing the earlier ruling). The court explained its reasoning for the dismissal of the regulatory claims in an oral ruling which is not available on the docket.  (*See* Order, Doc. No. 21 in *Huck v. United States*, No. 2:21-cv-00011 (July 28, 2021) (dismissing claims three through six "[f]or the reasons stated during the hearing and set forth in Defendants' Motion").)

[16] 43 U.S.C. §§ 1701–1787.

[17] *See Huck II*, 2022 U.S. Dist. LEXIS 131117, at *1–2, 5–6.

[18] 28 U.S.C. § 2409a.

[19] *Huck II*, 2022 U.S. Dist. LEXIS 131117, at *6–8.

[20] *Id.* at *8–12.

<u>Huck III</u>

Mr. Huck and Mr. Anderson filed their third suit two months later.[21]  They again claimed the Dingell Act's wilderness designations and BLM's implementation of accompanying motor vehicle restrictions violated the First Amendment's Establishment Clause and their Fifth Amendment rights to due process and equal protection.[22]  They also asserted BLM's actions exceeded its statutory authority—this time without expressly referencing R.S. 2477 roadways.[23]  The defendants (the United States, BLM, and two government officials) moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the court granted in part—dismissing all claims but denying the defendants' request to do so with prejudice.[24]

In its dismissal order, the court first determined "the previous standing deficiencies [were] now remedied for pleading purposes."[25]  The court noted Mr. Huck and Mr. Anderson had "bolstered their Complaint with allegations that they regularly went off-roading through the designated wilderness areas and have been forced to abandon concrete plans because of Congress's new designations and BLM's motor

---

[21] (*See* Compl., Doc. No. 1 in *Huck v. United States*, No. 2:22-cv-00588 (D. Utah Sept. 9, 2022) ("*Huck III* Compl.").)

[22] (*Id*. at 24–28.)

[23] (*See id.* at 28–29.)

[24] *See Huck v. United States*, No. 2:22-cv-00588, 2023 U.S. Dist. LEXIS 168786, at *33 (D. Utah Sept. 21, 2023) (unpublished) (*Huck III*).

[25] *Id.* at *6.

vehicle restrictions."[26]  The court concluded they sufficiently alleged injury-in-fact for

Article III standing purposes.[27]  As to redressability, the court noted Mr. Huck and Mr.

Anderson clarified in their briefing that they were not asserting a right to travel by

motorized means on R.S. 2477 roadways.[28]  Rather, they asked the court "to declare

the Dingell Act and BLM motor vehicle restrictions unlawful or unconstitutional and to

enjoin Defendants from closing roads, trails, and access to areas previously available to

mechanized or motorized travel."[29]

      Describing this as a "tall order," the court nevertheless noted "an action does not

fail for lack of standing simply because the plaintiff's theory is novel or far-fetched."[30]

The court reasoned "a favorable decision would effectively vitiate the Dingell Act's 2019

wilderness area designations, reverting Plaintiffs' backcountry destinations to their pre-

designation status."[31]  Likewise, the court could strike down the motor vehicle

restrictions as unlawful or unconstitutional, and enjoin BLM from pursuing an

unconstitutional policy or program.[32]  The court found these favorable outcomes would

---

[26] *Id.* at *11.

[27] *Id.*

[28] *Id.* at *13.

[29] *Id.* (internal quotation marks omitted).

[30] *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 95–96 (1998); *Valdez v. NSA*, 228 F. Supp. 3d 1271, 1281–86 (D. Utah 2017)).

[31] *Id.* at *14.

[32] *Id.*

likely redress Mr. Huck and Mr. Anderson's injuries, sufficient to satisfy the redressability requirement.[33]

Next, the court considered the merits of Mr. Huck and Mr. Anderson's claims under Rule 12(b)(6). It found their "threadbare allegations of governmental advancement of Earth religions fail to sustain a plausible claim for relief" under the Establishment Clause.[34] It found Mr. Huck and Mr. Anderson's procedural due process claim failed because they did not allege a protected liberty or property interest, nor did they properly allege a lack of process.[35] It determined their equal protection claim failed because the challenged government actions were facially neutral, and Mr. Huck and Mr. Anderson did not allege discriminatory intent or facts sufficient to overcome the presumption of rationality.[36] Finally, the court found their challenge to agency authority failed because federal statutes provided "a clear mandate to take the exact agency actions Plaintiffs now challenge as unauthorized."[37] Accordingly, the court dismissed the case for failure to state a claim under Rule 12(b)(6).[38] But it did so without prejudice, noting that although this was the third lawsuit raising these claims, it was "the

---

[33] *Id.*

[34] *Id.* at *20.

[35] *Id.* at *20–26.

[36] *Id.* at *26–29.

[37] *Id.* at *30.

[38] *Id.* at *32–33.

first time Plaintiffs have had their claims—as opposed to their standing—fully addressed by a district court."[39]

<u>Present Action</u>

Mr. Huck and Mr. Anderson filed the present action against BLM and DOI a year and a half after their third case was dismissed.[40]  Their factual allegations are nearly identical to those in their third lawsuit: the only changes are the omission of certain paragraphs found in the prior complaint,[41] updated allegations regarding their ages and plans to visit the areas at issue;[42] and a description of certain organizations as "Environmental" instead of "Earth-religionist."[43]  Mr. Huck and Mr. Anderson also bring identical constitutional claims to those in their third lawsuit, asserting Congress's wilderness designations and the motor vehicle restrictions implemented by BLM violate their rights under the Establishment Clause, and their due process and equal protection rights.[44]  Finally, they bring two other "causes of action" which are difficult to parse but appear to challenge BLM's statutory authority to impose motor vehicle restrictions.[45]

---

[39] *Id.*

[40] (Compl., Doc. No. 1.)

[41] (*See Huck III* Compl. ¶¶ 27–36, 37, 37(e), 39, 41(b), Doc. No. 1 in *Huck v. United States*, No. 2:22-cv-00588 (D. Utah Sept. 9, 2022).)

[42] (Compl. ¶¶ 16–18, Doc. No. 1.)

[43] (*Id.* ¶¶ 3, 40.)

[44] (*Id.* at 18–23.)

[45] (*See id.* at 23–28.)

8

BLM and DOI move to dismiss the case with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Mr. Huck and Mr. Anderson fail to state any plausible claim for relief.[46]

## LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[47]  The court accepts well-pleaded factual allegations as true and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[48]  But the court need not accept a plaintiff's conclusory allegations as true.[49]  "[A] plaintiff must offer specific factual allegations to support each claim"[50] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[51]

Because Mr. Huck and Mr. Anderson proceed pro se (without an attorney), their filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[52]  Still, pro se plaintiffs must follow the same procedural

---

[46] (*See* Mot. 2, Doc. No. 3.); *see also* Fed. R. Civ. P. 12(b)(6).

[47] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[48] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[49] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[50] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[52] *Hall*, 935 F.2d at 1110.

rules as other litigants.[53]  For instance, pro se plaintiffs still have "the burden of alleging

sufficient facts on which a recognized legal claim could be based."[54]  While courts make

some allowances for a pro se plaintiff's "failure to cite proper legal authority, his

confusion of various legal theories, his poor syntax and sentence construction, or his

unfamiliarity with pleading requirements,"[55] the court "will not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's

behalf."[56]

**ANALYSIS**

Mr. Huck and Mr. Anderson fail to state a plausible claim for violation of their

constitutional rights—largely for the reasons explained by the court in *Huck III*.  They

also fail to state a plausible claim that BLM exceeded its statutory authority, or any other

cognizable claim for relief.

A. <u>First Amendment Establishment Clause Claim</u>

The First Amendment's Establishment Clause provides "Congress shall make no

law respecting an establishment of religion."[57]  Mr. Huck and Mr. Anderson claim the

Dingell Act and associated wilderness designations violate the Establishment Clause

because the designations were made "to support and establish the Earth-religions and

---

[53] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[54] *Hall*, 935 F.2d at 1110.

[55] *Id.*

[56] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[57] U.S. Const. amend. I.

their tenets regarding the 'sacredness' of public lands."[58]  They describe these "Earth-religions" as religions "hold[ing] beliefs in a 'Gaia' or a 'Mother Earth' and whose gospels falsely imbue land as having anthropomorphic features in need of 'protection.'"[59]  In their motion to dismiss, BLM and DOI contend this claim fails because wilderness designations are not religious in nature (hence, are unlike other government acts prohibited by the Establishment Clause).[60]

This claim is identical to the Establishment Clause claim dismissed under Rule 12(b)(6) in *Huck III*, and it should be dismissed for the same reasons.  As explained in *Huck III*, the Establishment Clause "mandate[s] governmental neutrality between religion and religion, and between religion and nonreligion."[61]  In *Kennedy v. Bremerton School District*,[62] the Supreme Court established a new test for evaluating Establishment Clause claims, instructing courts to consider them with "reference to historical practices and understandings."[63]  Under this approach, "the line that courts and governments must draw between the permissible and the impermissible has to

---

[58] (Compl. ¶ 57, Doc. No. 1.)

[59] (*Id.* ¶ 12.)

[60] (*See* Mot. 8–9, Doc. No. 3.)

[61] *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1223 (10th Cir. 2005) (citation omitted); *see also Huck III*, 2023 U.S. Dist. LEXIS 168786, at *17.

[62] 597 U.S. 507 (2022).

[63] *Id.* at 535 (citation omitted).

11

accord with history and faithfully reflect the understanding of the Founding Fathers."[64]

Government actions which are consistent with the nation's traditions—and do not

constitute religious coercion—do not violate the Establishment Clause.[65] The *Kennedy*

Court also recognized the Establishment Clause prohibits the government from

"mak[ing] a religious observance compulsory," such as forcing anyone to attend church

or engage in a formal religious exercise.[66]

Applying this framework, the *Huck III* court evaluated Mr. Huck and Mr.

Anderson's claim "with an eye toward the historical practice and understanding of the

Establishment Clause and federal public lands management."[67] The court noted that

"[w]hile the concept of designated wilderness areas and motor vehicles might have

seemed outlandish to the Founding Fathers, there is substantial legal authority

supporting the federal government's historically broad authority to designate public

lands and restrict access to them."[68] The court concluded "[t]hese actions, without

more, do not raise the specter of government coercion of religious practices or

observances."[69] And it noted Mr. Huck and Mr. Anderson did not allege they were

---

[64] *Id.* at 535–36 (citation modified).

[65] *Id.* at 536–37.

[66] *Id.* at 537 (citations omitted).

[67] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *18.

[68] *Id.* (citing *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) ("[T]he Property Clause [U.S. Const. art. IV § 3, cl. 2] gives Congress plenary power to legislate the use of [] federal land . . . .")).

[69] *Id.* at *18–19.

compelled to follow a specific religious practice or observe any religious tradition.[70]  The court also found their allegation that wilderness designations were made to "support and establish the Earth-religions and their tenets" conclusory, noting they "failed to connect the dots between the challenged government actions and the alleged establishment of Earth religions."[71]  Ultimately, the court concluded Mr. Huck and Mr. Anderson's "threadbare allegations of governmental advancement of Earth religions fail to sustain a plausible claim for relief" under the Establishment Clause.[72]

Mr. Huck and Mr. Anderson have added no new allegations to support this claim in the present action, nor have they identified any legal authority supporting their assertion that wilderness designations or restrictions on motorized vehicle access violate the Establishment Clause.[73]  Accordingly, for the reasons set forth in *Huck III*, Mr. Huck and Mr. Anderson fail to state a plausible claim for relief under the Establishment Clause.

---

[70] *Id.* at *19.

[71] *Id.* at *19 & n.107 (citation omitted).

[72] *Id.* at *20.

[73] Mr. Huck and Mr. Anderson cite *Torcaso v. Watkins,* 367 U.S. 488 (1961), in arguing closing public lands to motorized vehicles violates the Establishment Clause.  (*See* Opp'n 2, Doc. No. 10.)  But *Torcaso* did not address management of public lands; rather, the *Torcaso* Court held a state law requiring public officials to declare their "belief in the existence God" violated the Establishment Clause.  367 U.S. at 489, 496. Accordingly, this case is inapplicable and does not support Mr. Huck and Mr. Anderson's argument.

B.  <u>Fifth Amendment Due Process Claims</u>

The Due Process Clause of the Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law."[74]  The Fifth Amendment "provides individuals with both substantive and procedural due process rights."[75]  "Procedural due process ensures the state will not deprive a party of property [or liberty] without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property [or liberty] for an arbitrary reason regardless of the procedures used to reach that decision."[76]

Mr. Anderson and Mr. Huck contend the wilderness designations and motor vehicle restrictions at issue violate the Due Process Clause because "Plaintiffs and other similarly situated individuals [were denied] any real input or ability to protect their interests in the decision-making process regarding the designation of wilderness areas."[77]  They allege Mr. Anderson attended public meetings relating to "the SRRA Wilderness legislation" but was "ridiculed, insulted, humiliated and marginalized in an attempt to silence his voice."[78]  They also contend, generally, that they were denied

---

[74] U.S. Const. amend. V.

[75] *United States v. Palms*, 21 F.4th 689, 702 (10th Cir. 2021).

[76] *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

[77] (Compl. ¶ 67, Doc. No. 1.)

[78] (*Id.*)

"reasonable access to scenic and recreational areas enjoyed by the able-bodied based upon arbitrary and capricious reasoning or abuses of discretion."[79]

BLM and DOI assert the complaint fails to state a plausible claim for either a procedural or substantive due process violation.[80]  BLM and DOI argue Mr. Huck and Mr. Anderson, by their own admission, were able to engage in the public process, and they continue to have recourse through the legislative and electoral process.[81]  BLM and DOI also contend a disagreement with Congress's decision does not establish any procedural due process violation, and Mr. Huck and Mr. Anderson fail to allege a plausible liberty or property interest supporting a substantive due process claim.[82]

1. *Procedural Due Process*

Mr. Huck and Mr. Anderson fail to state a claim for violation of procedural due process.  To state a procedural due process claim, a plaintiff must plead two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process."[83]  The court in *Huck III* concluded Mr. Huck and Mr. Anderson failed to adequately allege either element.[84]  Where Mr. Huck

---

[79] (*Id.* ¶ 66.)

[80] (Mot. 10–11, Doc. No. 3.)

[81] (*Id.*)

[82] (*Id.* at 11.)

[83] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

[84] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *22–26.

and Mr. Anderson's due process claim in this action is identical, it fails for the reasons explained in *Huck III*.

First, Mr. Huck and Mr. Anderson do not allege a protected liberty or property interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it."[85] As the *Huck III* court noted, Mr. Huck and Mr. Anderson's desire for "reasonable access to scenic and recreational areas" falls short of this threshold.[86] Likewise, they do not allege a recognized liberty interest. "To assert a liberty interest protected by the due process clause, the plaintiff must show 'a present and legally recognized substantive entitlement' rather than a 'judicially unenforceable substantial hope.'"[87] While the Supreme Court has recognized interstate travel as a fundamental right,[88] this right is not implicated by burdens on a specific mode of transportation.[89]

---

[85] *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[86] *See Huck III*, 2023 U.S. Dist. LEXIS 168786, at *22; *see also Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978) (holding members of the public do not have a property interest in using public roads); *Friends of Blue Mound State Park v. Wis. Dep't of Nat. Res.*, 654 F. Supp. 3d 807, 827 (W.D. Wis. 2023) ("[C]itizens generally don't have a property interest in using a park or controlling how it's used." (citing *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 737 (7th Cir. 2020))).

[87] *JLPR, LLC v. Utah Dep't of Agric. & Food*, No. 2:21-cv-00436, 2022 U.S. Dist. LEXIS 111730, at *7 (D. Utah May 16, 2022) (unpublished) (quoting *Kerry v. Din*, 576 U.S. 86, 98 (2015) (Scalia, J., plurality)).

[88] *See Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (discussing Supreme Court jurisprudence regarding interstate travel).

[89] *See Abdi v. Wray*, 942 F.3d 1019, 1029–30 (10th Cir. 2019) (citing *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999)); *see also Am. Whitewater v. Tidwell*, 959 F. Supp. 2d

16

Accordingly, courts have found "minor restrictions on travel, such as the ability to use a specific mode of transportation on a limited number of roads, do not amount to the denial of a liberty interest."[90]  Accordingly, Mr. Huck and Mr. Anderson do not have protected property or liberty interests in accessing wilderness areas using motorized vehicles.

Second, Mr. Huck and Mr. Anderson have not alleged facts showing "a governmental failure to provide an appropriate level of process."[91]  As the court in *Huck III* explained, "it is far from certain that the Dingell Act and concomitant motor vehicle restrictions even require any additional processes aside from the usual rigors of lawmaking."[92]  This is because "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient."[93]  Regardless, even if constitutional procedural due

---

839, 865 (D.S.C. 2013) (finding whitewater floating restrictions did not implicate a protected liberty or property interest because there is no "constitutional right to the most convenient form of travel" (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991))).

[90] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *23 (citing *Fruitts v. Union Cnty.*, No. 2:14-CV-00309, 2015 U.S. Dist. LEXIS 119796, at *16–21 (D. Or. Aug. 17, 2015) (unpublished); *Baker v. Dep't of Env't Conservation*, 634 F. Supp. 1460, 1466 (N.D.N.Y. 1986)).

[91] *Citizen Ctr.*, 770 F.3d at 916.

[92] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *24.

[93] *ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1078–79 (D.N.M. 2021) (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994)); *see also*

process requirements applied to the wilderness designations and restrictions at issue,

Mr. Huck and Mr. Anderson do not allege they were denied notice and a hearing.  By

their own account, Mr. Huck and Mr. Anderson had the opportunity to attend public

meetings regarding wilderness designations.[94]  While they allege they were "ridiculed,

insulted, humiliated and marginalized" at those meetings and denied "any real input,"[95]

they do not identify "any specific deficiencies with the process afforded by the

government."[96]  Accordingly, they have not adequately alleged a lack of process as

required to support a procedural due process claim.

Because Mr. Huck and Mr. Anderson do not allege a protected liberty or property

interest, and they do not identify any process due yet lacking, they fail to state a

plausible procedural due process claim.

### 2. Substantive Due Process

Mr. Huck and Mr. Anderson also fail to state a plausible substantive due process

claim.[97]  "The substantive due process doctrine bars certain government actions

---

*Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1045 (10th Cir. 2016)
("[C]onstitutional procedural due process does not govern the enactment of
legislation.").

[94] (Compl. ¶ 67, Doc. No. 1.)

[95] (*Id.*)

[96] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *25.

[97] The *Huck III* court declined to analyze substantive due process, concluding it was "far
from clear" that Mr. Huck and Mr. Anderson asserted a substantive due process claim
and noting the parties did not address such a claim in their briefing.  2023 U.S. Dist.
LEXIS 168786, at *31–32.  Although the due process allegations in this case are

regardless of the fairness of the procedures used to implement them."[98]  "The Supreme

Court has found substantive due process violations when (1) government action

infringes a fundamental right without a compelling government interest, or

(2) government action deprives a person of life, liberty, or property in a way that shocks

the conscience."[99]  Generally, the fundamental-rights approach applies when a plaintiff

challenges legislative action, while the shocks-the-conscience approach applies when a

plaintiff "seeks relief for tortious executive action."[100]  But the Tenth Circuit has clarified

an "executive action" in this context typically means a "specific act of a governmental

officer."[101]  Where a plaintiff challenges agency actions "undertaken pursuant to broad

governmental policies," this is "akin to a challenge to legislative action" and the

fundamental-rights approach applies.[102]  Because Mr. Huck and Mr. Anderson

challenge the Dingell Act (legislative action) and BLM's implementation of it, rather than

a specific government official's tortious act, the fundamental-rights approach applies

here.

---

identical to those in *Huck III*, the parties' briefing in this case addresses substantive due
process.  (*See* Mot. 11, Doc. No. 3; Opp'n 3–4, Doc. No. 10.)  Accordingly, substantive
due process is analyzed here.

[98] *Maehr*, 5 F.4th at 1117 (internal quotation marks omitted).

[99] *Id.* (internal quotation marks and citations omitted).

[100] *Id.* (emphasis omitted) (citation omitted).

[101] *Abdi*, 942 F.3d at 1027 (citation omitted).

[102] *Id.* at 1027–28.

The fundamental-rights framework has three steps.  First, the court "must determine whether a fundamental right is at stake either because the Supreme Court or the Tenth Circuit has already determined that it exists," or because the right "is objectively among those deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty such that it is fundamental."[103]  Second, the court determines "whether the claimed right—fundamental or not—has been infringed through either total prohibition or direct and substantial interference."[104]  Third, the court applies the appropriate level of scrutiny.[105]  If legislative action burdens a fundamental right, strict scrutiny applies—meaning the government action must be "narrowly tailored to serve a compelling government interest."[106]  "But if an enactment burdens some lesser right, the infringement is merely required to bear a rational relation to a legitimate government interest."[107]

Mr. Huck and Mr. Anderson allege they were denied "reasonable access to scenic and recreational areas enjoyed by the able-bodied based upon arbitrary and capricious reasoning or abuses of discretion."[108]  In their opposition brief, they assert their exclusion from "meaningful access to vast tracts of public land" burdens a

---

[103] *Id.* (internal quotation marks omitted).

[104] *Id.* (citation modified).

[105] *Maehr*, 5 F.4th at 1117.

[106] *Id.* (citation omitted).

[107] *Id.* (citation omitted).

[108] (Compl. ¶ 66, Doc. No. 1.)

"fundamental liberty interest."[109]  But they identify no authority recognizing access to

public land as a fundamental right.[110]  As noted above, while interstate travel is

recognized as a fundamental right,[111] this right is not implicated by burdens on a

specific mode of transportation.[112]  And district courts addressing similar due process

claims have concluded the right to use motorized transportation in wilderness areas is

not fundamental.[113]  Accordingly, Mr. Huck and Mr. Anderson have not plausibly alleged

a fundamental right is at stake.  Therefore, rational basis review applies.

Rational basis review is satisfied "if there is any reasonably conceivable state of

facts that could provide a rational basis for the [infringement]."[114]  "This requires no

more than a reasonable fit between governmental purpose and the means chosen to

advance that purpose."[115]  This standard is "highly deferential," and "the burden is on

---

[109] (Opp'n 3, Doc. No. 10.)

[110] Mr. Huck and Mr. Anderson rely on *Tennessee v. Lane*, 541 U.S. 509 (2004), in arguing exclusion from public land burdens a fundamental liberty interest.  But that case addressed "the fundamental right of access to the courts," not access to public land.  *Id.* at 533–34.  Accordingly, it is inapplicable here.

[111] *See Maehr*, 5 F.4th at 1118.

[112] *See Abdi*, 942 F.3d at 1029–30.

[113] *See Baker*, 634 F. Supp. at 1466 ("The right to use motorized vehicles, vessels and aircraft in the wilderness is not a fundamental right."); *Nat'l Ass'n of Prop. Owners v. United States*, 499 F. Supp. 1223, 1247 (D. Minn. 1980) ("[T]he right to operate motorized vehicles in the Wilderness is not fundamental.").

[114] *Maehr*, 5 F.4th at 1122 (alteration in original) (citation omitted).

[115] *Id.* (citation modified).

the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means."[116]

Mr. Huck and Mr. Anderson's allegations do not overcome this threshold.  In their briefing, they acknowledge "reasonable regulation is necessary to preserve natural resources and ensure safe use"[117]—essentially conceding these are legitimate governmental purposes.  However, they claim the wilderness designations and restrictions at issue were made "based upon arbitrary and capricious reasoning or abuses of discretion."[118]  They also contend wilderness designations were applied to "large tracts of land" which "are not of critical environmental concern."[119]  But these statements are conclusory, and Mr. Huck and Mr. Anderson offer few supporting factual allegations.  For example, they assert some designated areas did not meet the statutory definition of "wilderness" under the Wilderness Act of 1964[120] and Federal Land Policy and Management Act of 1976[121] because they had roads or were historically used for mining.[122]  These allegations fall short of demonstrating the Dingell Act's wilderness designations and associated motor vehicle restrictions bear no rational relation to the

---

[116] *Id.* (citation modified).

[117] (Opp'n 3, Doc. No. 26.)

[118] (Compl. ¶ 66, Doc. No. 1.)

[119] (*Id.* ¶ 68; *see also id.* ¶ 44.)

[120] 16 U.S.C. §§ 1131–1136.

[121] 43 U.S.C. §§ 1701–1787.

[122] (*See* Compl. ¶¶ 33–44, Doc. No. 1.)

legitimate purpose of preserving natural resources.[123]  They have not offered specific

factual allegations showing the challenged restrictions lack a rational basis.

For these reasons, Mr. Huck and Mr. Anderson fail to state a plausible claim for

violation of substantive due process.

C.  Fifth Amendment Equal Protection Claim

Mr. Huck and Mr. Anderson next bring an equal protection claim under the Fifth

Amendment.  They assert restrictions on motorized vehicles in wilderness areas are

discriminatory against them and others who are "aged, handicapped and disabled"

because the restrictions effectively exclude them from accessing those areas.[124]  BLM

and DOI argue this claim must be dismissed because the Dingell Act and motor vehicle

restrictions are facially neutral, they affect neither a suspect class nor a fundamental

right, and they are rationally related to the legitimate government interest of "managing

and protecting the natural resources of the United States."[125]

"While the Fifth Amendment contains no equal protection clause, the equal

protection standards of the Fourteenth Amendment are incorporated into the Fifth

Amendment's promise of due process."[126]  "Equal protection requires the laws to afford

---

[123] *See Baker*, 634 F. Supp. at 1466 (finding a ban on motorized transportation in wilderness areas was "rationally connected to the State's interest in preserving its undeveloped lands in their natural, unspoiled condition" and was "clearly not an arbitrary limitation").

[124] (Compl. ¶ 32, Doc. No. 1; *see also id.* ¶¶ 37–38, 62, 66.)

[125] (Mot. 13, Doc. No. 3.)

[126] *United States v. McHorse*, 179 F.3d 889, 897 n.1 (10th Cir. 1999).

similarly situated people like treatment."[127]  But it does not "guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations."[128]  "[A] neutral law that disproportionately impacts [a group] does not violate equal protection . . . unless that impact can be traced to a discriminatory purpose."[129]

"Once a plaintiff shows discriminatory intent and an adverse effect, a court reviews the government action under the appropriate level of scrutiny."[130]  Strict scrutiny applies to claims involving a suspect classification or deprivation of a fundamental right.[131]  But laws discriminating between groups on other bases "need only bear a rational relation to some legitimate end" to comport with equal protection.[132]  Age and disability are not suspect classifications for purposes of equal protection; thus, classifications based on age or disability are subject to rational basis review.[133]

---

[127] *Greer v. Herbert*, No. 2:16-cv-01067, 2018 U.S. Dist. LEXIS 78323, at *22 (D. Utah May 8, 2018) (unpublished) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)), *aff'd,* 768 F. App'x 787 (10th Cir. 2019).

[128] *Secsys, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012).

[129] *Greer*, 2018 U.S. Dist. LEXIS 78323, at *23 (second and third alterations in original) (citing *United States v. Williams*, 45 F.3d 1481, 1486 (10th Cir. 1995)).

[130] *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021).

[131] *Id.*

[132] *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998) (internal quotation marks omitted).

[133] *See Whitington v. Moschetti*, 423 F. App'x 767, 770 (10th Cir. 2011) (unpublished) (addressing disability classifications); *Taylor v. Ortiz*, 410 F. App'x 76, 79 (10th Cir. 2010) (unpublished) (addressing age classifications).

Mr. Huck and Mr. Anderson fail to state a plausible equal protection claim, for the reasons explained in *Huck III*.[134]  First, the challenged designations and wilderness restrictions are facially neutral, and Mr. Huck and Mr. Anderson do not adequately allege discriminatory intent.  "[A] discriminatory effect against a group or class may flow from state action," or "even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an *intended* consequence of state action."[135]  Mr. Huck and Mr. Anderson allege BLM has, "with malice at worst and indifference at best, acted to deprive the aged, disabled, and handicapped . . . from being able to access and travel upon" public lands.[136]  But their accusation of malice is conclusory, speculative, and unsupported by specific factual allegations from which discriminatory intent could be inferred.[137]  As the *Huck III* court noted, Mr. Huck and Mr. Anderson "stress that the Dingell Act and motor vehicle restrictions were the result of the Earth-religionists' efforts to preserve and protect Gaia or Mother Earth, rather than an attempt to hinder the elderly or disabled."[138]  "In other words, the disproportionate impact on elderly and disabled motorists such as Plaintiffs was a byproduct, rather than

---

[134] *See* 2023 U.S. Dist. LEXIS 168786, at *26–29.

[135] *Secsys*, 666 F.3d at 685 (emphasis added).

[136] (Compl. ¶ 37, Doc. No. 1; *see also id.* ¶ 4 (describing BLM's actions as "a pogrom against people who use motorized means to access public lands").)

[137] *See Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) ("[C]onclusory allegations that the classification lacks a rational basis and was created with malicious intent are insufficient to overcome the presumption of government rationality.").

[138] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *28 (internal quotation marks omitted); (*see also* Compl. ¶¶ 12, 39, 52, 58, Doc. No. 1).

goal, of the Earth-religionists and their government actors."[139]  Their allegations are insufficient to show discriminatory intent.

Second, Mr. Huck and Mr. Anderson also fail to allege facts showing the challenged restrictions lack a rational basis.  Rational basis review applies where, as here, the claim does not involve members of a suspect class or a fundamental right.[140] Under this standard, an equal protection claim fails "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[141]  As noted above, Mr. Huck and Mr. Anderson fail to offer specific, nonconclusory allegations showing the challenged motor vehicle restrictions bear no rational relation to the legitimate purpose of preserving natural resources.[142]

For these reasons, Mr. Huck and Mr. Anderson's equal protection claim must be dismissed.

D.  <u>Third and Fourth Causes of Action</u>

Mr. Huck and Mr. Anderson's third and fourth causes of action are labeled "Chevron Deference" and "Sackett v. EPA and West Virginia v. EPA."[143]  These

---

[139] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *28.

[140] *See White*, 157 F.3d at 1234.

[141] *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

[142] *See Huck III*, 2023 U.S. Dist. LEXIS 168786, at *29; *see also Teigen*, 511 F.3d at 1086 (finding conclusory allegations that a classification lacks a rational basis "insufficient to overcome the presumption of government rationality").

[143] (Compl. 23, 25, Doc. No. 1.)

sections of the complaint largely consist of legal argument,[144] and it is difficult to discern the precise claims Mr. Huck and Mr. Anderson are attempting to bring.  They reference various court cases, constitutional provisions, and statutes, including the Administrative Procedure Act.[145]  To the extent a theme can be discerned, Mr. Huck and Mr. Anderson seem to primarily challenge the motor vehicle restrictions as exceeding BLM's statutory authority.  (Indeed, the briefing on both sides treats the third and fourth causes of action as a challenge to agency action exceeding congressional authority, without addressing other potential causes of action.)[146]  As explained below, Mr. Huck and Mr. Anderson fail to state a plausible claim for relief on this, or any other, basis.

In *Huck III*, Mr. Huck and Mr. Anderson brought a claim for "declaratory judgment that BLM has exceeded the authorities granted by Congress," citing *West Virginia v. EPA*,[147] a 2022 Supreme Court decision.[148]  In *West Virginia*, the Court held that in "extraordinary cases" where an agency claims broad regulatory authority, the agency must point to "clear congressional authorization," not "a merely plausible textual basis for agency action."[149]  In dismissing Mr. Huck and Mr. Anderson's claim, the *Huck III*

---

[144] Indeed, the complaint expressly refers to these sections as "legal argument" in several places.  (*See id.* ¶¶ 72, 75.)

[145] (*Id.* ¶¶ 72–89.)

[146] (*See* Mot. 13–16, Doc. No. 3; Opp'n 4–5, Doc. No. 10.)

[147] 597 U.S. 697 (2022).

[148] (*See Huck III* Compl. 28–29, Doc. No. 1 in *Huck v. United States*, No. 2:22-cv-00588 (D. Utah Sept. 9, 2022).)

[149] 597 U.S. at 723.

court found "BLM's authority to restrict motor vehicle access has clear congressional authorization."[150]  Specifically, "Congress has directed that 'each agency administering any area designated as wilderness shall be responsible for preserving the wilderness character of the area.'"[151]  And "with limited exceptions, federal statutes provide that 'there shall be no temporary road, no use of motor vehicles, [or] motorized equipment' in these areas."[152]  The court concluded that "[w]hen Congress designated Plaintiffs' former off-roading destinations as wilderness areas, they therefore conferred on BLM—the agency 'administering' the designated areas—a clear mandate to take the exact agency actions Plaintiffs now challenge as unauthorized."[153]  The court also noted Mr. Huck and Mr. Anderson did not refer to any statutory authority for this cause of action.[154]

　　Mr. Huck and Mr. Anderson now expressly refer to the Administrative Procedure Act, which permits courts to review and set aside agency action found to be "in excess of statutory jurisdiction [or] authority" (among other grounds).[155]  Mr. Huck and Mr.

---

[150] *Huck III*, 2023 U.S. Dist. LEXIS 168786, at *30.

[151] *Id.* (quoting 16 U.S.C. § 1133(b)).

[152] *Id.* (quoting 16 U.S.C. § 1133(c)).

[153] *Id.*

[154] *Id.*

[155] 5 U.S.C. § 706(2)(C); (*see also* Compl. ¶¶ 75, 80, 82, 83, Doc. No. 1).  Mr. Huck and Mr. Anderson also reference the Establishment Clause, due process, and equal protection in this section of the complaint, but their allegations are indistinguishable from the constitutional claims raised earlier in the complaint.

Anderson assert BLM's "extensive motor vehicle restrictions on public lands . . . appear to exceed its statutory authority under the FLPMA [and] lack clear congressional authorization."[156]  They claim the Federal Land Policy Management Act "does not explicitly authorize the BLM to impose broad prohibitions on motorized access while allowing other forms of travel."[157]  They contend three Supreme Court decisions support their position: *West Virginia v. EPA*,[158] *Sacket v. EPA*,[159] and the "Supreme Court case reversing Chevron deference"[160]—presumably referring to *Loper Bright Enterprises v. Raimondo*.[161]

Mr. Huck and Mr. Anderson still fail to state a plausible claim that BLM exceeded its statutory authority in imposing motor vehicle restrictions in wilderness areas.  As the *Huck III* court noted, the Wilderness Act of 1964 expressly prohibits the use of motor vehicles within designated wilderness areas (with limited exceptions not relevant here).[162]  It also provides "each agency administering any area designated as wilderness shall be responsible for preserving the wilderness character of the area."[163]

---

[156] (Compl. ¶ 83, Doc. No. 1.)

[157] (*Id.* ¶ 79.)

[158] 597 U.S. 697 (2022).

[159] 598 U.S. 651 (2023).

[160] (Compl. ¶ 72, Doc. No. 1.)

[161] 603 U.S. 369 (2024).

[162] *See* 16 U.S.C. § 1133(c).

[163] *Id.* § 1133(b).

Thus, BLM's imposition and enforcement of motor vehicle restrictions in wilderness areas is expressly authorized by statute. And BLM's actions do not run afoul of *West Virginia v. EPA*,[164] for the reasons stated in *Huck III*.

Mr. Huck and Mr. Anderson's reliance on *Sackett* and *Loper Bright* is also unavailing. In *Sackett*, the Supreme Court addressed the scope of the EPA's authority under the Clean Water Act, finding the EPA's broad interpretation of the phrase "waters of the United States" lacked clear congressional authorization.[165] In *Loper Bright*, the Supreme Court held courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous"—overruling the doctrine known as *Chevron* deference.[166] But here, the prohibition on motor vehicles in wilderness areas is expressly and unambiguously authorized—indeed, required—by the Wilderness Act, as explained above. Mr. Huck and Mr. Anderson fail to advance any colorable argument to the contrary. For these reasons, Mr. Huck and Mr. Anderson fail to state a plausible claim under the APA that BLM exceeded its statutory authority. This claim must be dismissed.

Mr. Huck and Mr. Anderson also make passing references to other potential causes of action in this section of the complaint. For example, they contend BLM's

---

[164] 597 U.S. 697.

[165] *See* 598 U.S. at 681.

[166] 603 U.S. at 412–13; *see also Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).

implementation of motor vehicle restrictions was arbitrary and capricious under the APA;[167] "lacked adequate public notice, opportunity for comment, and comprehensive environmental assessments";[168] and violated the Rehabilitation Act of 1973 and the Americans with Disabilities Act.[169]  But all these assertions are conclusory and unsupported by specific factual allegations.  While courts construe pro se litigants' filings liberally, courts "cannot take on the responsibility of serving as [their] attorney in constructing arguments and searching the record."[170]  Because Mr. Huck and Mr. Anderson fail to develop any other potential claims with supporting factual allegations, they do not state any other cognizable claim for relief.

* * *

In sum, Mr. Huck and Mr. Anderson fail to state any plausible claim for relief against BLM and DOI.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[171]  And dismissal should be without prejudice if it is "at all possible that the party against whom the

---

[167] (Compl. ¶ 75(2), Doc. No. 1.)

[168] (*Id.* ¶ 82.)

[169] (*Id.* ¶ 75(3).)

[170] *Lankford v. Wagner*, 853 F.3d 1119, 1122 (10th Cir. 2017) (alteration in original) (citation omitted).

[171] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

dismissal is directed can correct the defect in the pleading or state a claim for relief."[172]

Here, Mr. Huck and Mr. Anderson have had multiple opportunities to plead their claims

and correct deficiencies identified in prior dismissal orders. Even after the court in *Huck*

*III* addressed their claims on the merits under Rule 12(b)(6), they filed largely identical

claims in this fourth lawsuit, and they still fail to state any plausible claim for relief.

Under these circumstances, further opportunities to amend would be futile, and

dismissal with prejudice is appropriate.

<u>RECOMMENDATION</u>

Because Mr. Huck and Mr. Anderson fail to state any plausible claim for relief,

and further opportunities to amend would be futile, the undersigned recommends the

district court grant BLM and DOI's motion to dismiss[173] and dismiss this case with

prejudice. The parties have the right to object to this Report and Recommendation

within fourteen days, and failure to object may be considered a waiver of objections.[174]

DATED this 6th day of February, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[172] *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (citation omitted).

[173] (Doc. No. 3.)

[174] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).